Estate of Juan F. Portuondo, deceased.  Appeal of the Commonwealth of Pennsylvania.

*Taxation—Constitutional law—Direct inheritance tax—Act of May 12, 1897.*

The Act of May 12, 1897, P. L. 56, known as "The Direct Inheritance Tax Law" is unconstitutional.

Argued Jan. 24, 1898.  Appeal, No. 440, Jan. T., 1897, by the commonwealth of Pennsylvania, from decree of O. C. Phila. Co., Jan. Term, 1897, No. 239, dismissing exceptions to adjudication.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to adjudication.  Before the court in banc.

The question of the direct succession tax was first raised on the adjudication of the executors' account in Blight's Estate, orphans' court, Philadelphia county, April term, 1897, No. 125, where the following adjudication was filed:

HANNA, P. J., June 4, 1897:

And now, the above account having been called for audit, Francis A. Lewis, Esq., appeared as counsel for the accountants.

No creditors appeared and no claims were presented against the estate.

It was shown that testator died December 2, 1894, leaving a will duly proved, with its codicils, on December 13, 1894, by which, inter alia, he bequeathed a large number of pecuniary legacies, aggregating $163,900, all of which have since been paid by the executors, as appears from the account, together with the collateral tax thereon, and the residue of his estate he gave to his executors in trust to pay the income therefrom to his daughter, Elizabeth R. Blight, during her natural life, etc., and after her death to sell all his real estate and out of the proceeds pay certain legacies mentioned, together with any residue pro rata.

But by the third codicil to his will testator revoked the bequests payable out of his residuary estate after the death of his daughter, and in lieu thereof he gave the remainder of his estate, "after all legacies are paid, and after my daughter is dead, to her, her heirs, executors, administrators and assigns. The real estate must be sold, however, and the proceeds distributed. . . ."

A question, however, is suggested, whether this balance of personal estate is subject to the direct inheritance tax imposed by the act of May 12, 1897.

By the terms of the act, the sum of $5,000 is exempt from taxation. So that only those estates consisting of personalty to an amount exceeding that sum are subject to the tax. Real estate to the value of millions is exempt, but personal estate to the amount of $5,001, after deducting debts and necessary legal costs and expenses, such as commissions and counsel fees,

is subject to a tax upon the $1.00 over and in excess of the sum exempt.

The purpose of the act is to tax personal estate alone in excess of $5,000, leaving, as remarked, real estate wholly exempt. That the legislature may tax all personal estate and exempt all real estate, cannot be doubted. But it cannot tax only a part of the personal estate. It may tax all moneys, all horses, cattle, dogs, wagons, carriages, bank stock and household furniture, but it has no authority to tax only such horses and other domestic animals, wagons, carriages, bank shares, etc., as may not be of the value of more than a fixed sum, as, for instance, the sum of $100.

Under the first section of article 9 of the constitution of the state, it is declared that "all taxes shall be uniform upon the same class of subjects," etc. The act of assembly proposes to tax personal property alone. If it is conceded that this is the "class of subjects," then it follows that the entire "class," that is, all personal property must be made liable to the tax in order to comply with the mandate of the constitution. The tax cannot otherwise be uniform.

Furthermore, while the legislature is not bound to impose a tax upon any "class of subjects" or species of property, yet when it does so there can be no exemption, other than is expressly exempted by the constitution. If a tax is necessary, then it must be borne by all alike. The same article of the constitution provides "that the general assembly may by general laws exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity." So that when real estate is taxed, all real estate must be taxed other than those portions made exempt by the constitution.

But we will suppose the legislature does pass a law exempting other property from taxation, what is the result? The second section of the same article of the constitution declares that all such laws "shall be void."

Here the legislature has imposed a tax upon all personal estate, passing by will or under the intestate laws, or any interest therein or income therefrom transferred by deed, grant, sale or gift made in contemplation of the death of the grantor,

etc., or intended to take effect in possession or enjoyment after such death, etc., but has "provided that personal property to the amount of $5,000 shall be exempt from the payment of this tax in all estates."

This is clearly in contravention of the express provision of the constitution which declares that all property when made liable to a tax shall pay the tax, and no property shall be exempt other than is relieved or exempt therefrom by the constitution itself. And if any such exemption is made the law is void. The consequence is that the legislature, by endeavoring to exempt personal property to the value of $5,000, has violated the express provision of the constitution, and the law attempting to create or allow this exemption is wholly void.

If the legislature had declared that all personal estate passing to persons other than collateral heirs or next of kin shall pay a tax specified, without any limitation as to value, it would have exercised a prerogative, which cannot be well questioned.

All estates passing to collaterals are liable to a tax regulated by the act of May 6, 1887, which is but a re-enactment of the act of April 7, 1826, passed under the constitution of 1838, which contained no provision relative to taxation, nor to the exemption of property therefrom, as in the present constitution of the state.

It is provided by the act of 1887, that "no estate which may be valued at a less sum than $250 shall be subject to the duty or tax, but, having been passed since the adoption of the present constitution, it would follow, although the question has never been suggested, that the exemption not being authorized by the constitution, the act of 1887 is also invalid. If a collateral tax is to be assessed, then all estates must pay it.

But again, as to the act of 1897, it has a retroactive effect. The tax is not only imposed upon the personal estate of decedents and testators who may die subsequent to the passage of the act, but also upon the estates of those who have died prior to its passage, by declaring " that so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law." It need hardly be said that, upon the death of the owner of either real or personal estate, the title to and right of possession thereof

immediately passes to his heirs at law or to his legatees or devisees.    They take subject only to the debts of the prior owner, and have a vested right by operation of law.    They take also subject to such tax or burden as may then be in existence, imposed by the commonwealth as a price paid for their inheritance. But after this right and title have vested, we fail to discover any authority in the legislature to impose a tax upon the inheritance which did not exist at the time of the vesting and right of the distributee and legatee to the immediate possession.

As was held by GIBSON, C. J., in Hinnershits v. Bernhard's Exrs., 13 Pa. 518, in reference to the 11th section of the act of 1848, allowing to a widow who elects not to take under the will her share of the personal estate of her husband, that it is not to be applied to the estate of a testator who died before the passage of the act, though the act of election was not made till after its passage.    In that case the chief justice said: " The first question is, whether the rights of the legatees were so far vested that the act of 1848 could not touch them."    " The rights of the parties, however, were fixed at the death, and the legislature could not unfix them.    It is said they were not vested because the widow had not made her choice, but they certainly would be impaired by swaying her choice by means of a premium for throwing the burden of her provision on the legatees, and a law to give her such a premium would be unconstitutional."

It being therefore indisputable that the right of a legatee, distributee, annuitant or cestui que trust is vested as of the death of the decedent or testator, that vested right to the possession or enjoyment cannot be impaired or lessened by the imposition of a tax which did not exist at the date when such right of possession or enjoyment became vested.    And particularly where, as under the act of 1897, and again showing the want of uniformity of the tax, the bulk of an estate may have been paid and distributed to the persons entitled prior to the passage of the act, and they will take free from the tax ; yet, if a balance in excess of $5,000 remains unpaid and undistributed until after the passage of the act, this balance will be subject to the tax.

Thus the vested right of one class of persons is recognized and preserved, and the same vested right in the same estate of another class is burdened with a tax which falls upon them

through mistake, accident or unavoidable delay. For this reason, if for no other, this provision of the act of 1897 should be held unconstitutional.

Although not material to the question of the constitutionality of the act, it is to be noted that the 16th or final section of the act of 1897 sets forth the intention of the act to impose a direct inheritance tax upon all estates or parts of estates not subject to the collateral inheritance tax. This would include both real and personal estate, for both are subject to the collateral tax. But the 1st section of the act expressly limits the tax to personal property, and thus the first and last sections are squarely in conflict; one declaring that personal property alone is liable to the tax, and the other that "all estates or parts of estates not subject" to the collateral tax shall be liable to the tax.

But the act is invalid because it is repugnant to the plain provisions of the constitution. And where the words of the constitution are express, no exception can be made by construction: Com. v. Randall, 32 Leg. Int. 456, 2 W. N. C. 210. It is in violation of the clear and explicit declaration of article 9, sections 1 and 2. The tax imposed is not "uniform upon the same class of subjects," viz: personal property within the commonwealth. It further exempts personal property to the amount of $5,000, while the constitution expressly declares that the only property which can be exempted from taxation is "public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity." And it is furthermore provided by the constitution that if the legislature pass an act exempting property from taxation other than the property above enumerated, such law "shall be void."

The act of May 12, 1897, is open to these objections, and is therefore unconstitutional and null and void.

Distribution will therefore be made of the balance of the estate without any deduction of the tax imposed by said act.

This was followed by the adjudication of executors' account before PENROSE, J., orphans' court, Philadelphia county, January term, 1897, No. 239.

The decedent, John F. Portuondo, died January 7, 1896. The account of his executors was filed February 23, 1897. The

auditing judge, having passed upon the questions arising in reference to distribution, considered the question of the reservation of tax as provided for in the act of 1897, and disallowed the same.

The following adjudication by PENROSE, J., was filed June 11, 1897:

It remains only to consider how far the estate not passing collaterally is made liable to tax by the act of May 12, 1897.

That act provides (section 1) that "from and after the passage of this act all personal property of whatsoever kind and nature which shall pass," by will, the intestate laws of this state, or by deed, grant, sale, or gift made in contemplation of death or intended to take effect in possession or enjoyment after such death, from any person who may die seized or possessed of the same "while a resident of this state, whether the person or persons dying seized or possessed of the same be domiciled within or without of the state," and such property within this state if the decedent was not a resident, shall be subject to a tax of $2.00 on every $100 of the clear value, after deduction of debts and costs of administration; and that "all heirs, legatees, devisees, administrators, executors, and trustees shall only be discharged from liability for the amount of such taxes . . . . by paying the same, . . . . Provided: That personal property to the amount of five thousand dollars shall be exempt from the payment of this tax in all estates." This is followed by what is called a "further proviso," viz: "That so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law as well as the estates of persons who die hereafter." Section 5 provides that "Whenever such legacy shall be charged upon or payable out of real estate, the heir or devisee . . . . shall deduct therefrom at the rate aforesaid and pay the amount so deducted;" with the proviso that all taxes "imposed by this act shall be a lien upon the personal property of the estate on which the tax is imposed . . . . and shall continue a lien until said tax is paid and receipted for by the proper officer of the commonwealth."

What appears to be the title of the act is, "An act taxing gifts, legacies, and inheritances in certain cases and providing

for the collection thereof;" but the last section declares that "this act shall be known as 'the direct inheritance law,' and shall not be held to change, modify, or alter the existing law in reference to the collection of collateral inheritance taxes; it being the intention of this act to impose a direct tax on all estates or parts of estates not subject to the act or acts providing for the collection of collateral inheritance taxes."

Retrospective legislation (and it is only this operation of the act which concerns the present inquiry) is regarded as so improper and so opposed to every sense of right and justice, that statutes will always be construed as intended to apply to cases or facts coming into existence after the enactment, unless the language is so plain and express as to prevent such interpretation. The reason for this was expressed by Chief Justice TILGHMAN, in Bedford v. Shilling, 4 S. & R. 403: "Nothing less than positive expressions would warrant the court in giving a construction which would work manifest injustice. It must not be supposed that the legislature meant to do injustice." Or, as was said by Judge ROGERS, in McCabe v. Emerson, 18 Pa. 112, "My respect for the legislature is too great to allow me for a single instant to suppose that they designed so great a wrong as, by a retrospective act, to make that right which was clearly wrong."

But it must be admitted, where the intention that it shall operate retroactively is manifest, that an act is not, per se, void, unless it impairs the obligation of a contract, affects the law relating to crimes to the prejudice of the accused, interferes with vested rights, or conflicts with some other constitutional provision. And even where vested rights are the subject of the retrospective law, if it affects remedies only and not the right itself, it is not forbidden, even though it may be tyrannical and contrary to the spirit of free government, which requires laws to be "prescribed" and not "like the laws of Caligula, written in small characters and hung on high pillars." The distinction is thus stated by Chancellor KENT: "A retrospective statute, affecting and changing vested rights, is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature, provided they do not impair

contracts, or disturb absolute vested rights, and only go to con-
firm rights already existing, and in furtherance of the remedy
by curing defects and adding to the means of enforcing exist-
ing obligations.    Such statutes have been held valid when
clearly just and reasonable, and conducive to the general wel-
fare, even though they might operate upon existing rights, as
a statute to confirm former marriages defectively made or ac-
knowledged.    The legal rights affected in those cases by the
statutes were deemed to have vested subject to the equity ex-
isting against them, and which the statutes recognized and
enforced.    But the cases cannot be extended beyond the cir-
cumstances on which they repose without putting in jeopardy
the energy and safety of the general principle: " 1 Kent, 455.

The act now under consideration, so far as concerns that part
of it which is properly enactive, is prospective, purely, — oper-
ating "from and after the passage of this act" upon personal
property "which shall pass;" and it is only under the "pro-
viso" that the question arises.    But the office of a proviso, as
was said by Judge STORY in Minis v. United States, 15 Peters,
445, is "to except something from the enacting clause, or to
qualify or restrain its generality, or to exclude some possible
ground of misinterpretation of its extent" (1 Kent, 463, note c);
and it is by no means clear that this proviso can, under the rules
of interpretation as to retrospective statutes, be permitted to
exceed its proper function, as a qualification of the taxation of
estates passing after the act; that is to say, that future estates
shall not be taxable unless undistributed estates of persons dy-
ing before the passage of the act shall also be.    See Endlich
on Statutes, sec. 185; 1 Kent, 462.

Treating the proviso, however, as a substantive, independent
enactment, how far, irrespective of the question of the inequal-
ity of the burden which it imposes, is it to be regarded as free
from constitutional objection?    The theory of succession tax
legislation is that "the right to take by will or from intestates
is, after all, but a mere privilege of the municipal law, to be
changed, modified, or repealed in the discretion of the state,
and not a natural right; and it is only just and proper, in con-
sideration of this privilege, that property passing by will . . . .
or through the intestate laws . . . . should pay to the state
conferring this valuable privilege a fair and reasonable bonus

or percentage upon the value of the property thus transmitted
and received:" Dos Passos on Inheritance Tax Law, sec. 2.
The tax, therefore, is not upon the property passing, but upon
the right to receive it (Orcutt's Appeal, 1 Outerb. 179); and
where before the right has vested it is declared that it shall be
paid for, there can be no objection to the law so declaring.
But in Pennsylvania the right, so far as concerns the estates
of persons dying before the passage of the act of May 12, 1897,
was governed by the then existing laws; and though the prop-
erty acquired under it may not have been actually received,
the right, itself, was absolutely vested and complete.  The right
was not dependent upon the fact of distribution, and ownership
by persons who became lineally entitled, either under wills or
the intestate laws, passed in case of their deaths as part of their
estates, both for administration and distribution.

If the right thus vested may be taken away by subsequent
legislation to the extent of two per cent upon the property
passing under it, it may be to the extent of ten, twelve, twenty,
or fifty per cent, or altogether.  The property, as distinguished
from the right to succeed to it, may be the subject of taxation
in common with similar property owned by other citizens and
bearing the same burden, in return for the protection which all
alike receive from the government; but when the right vested
under existing laws is taxed by a subsequent law, for general
purposes of government and not for any purpose specially ben-
efiting the owner of such right, it is not only taking the prop-
erty of such owner without compensation, for public use, but
it is violating the other constitutional provision that all taxes
shall be equal.  And why should the vested right be taxed
when the property has not actually been received, and escape
taxation when the property has been?  The right is the subject
of the tax, and the distribution or nondistribution merely af-
fects the method and convenience of its collection.

It is true that in Short's Estate, 16 Pa. 63, it was held that
the act of March 11, 1850, passed in consequence of the decision
in Com. v. Smith, 5 Pa. 142, which provided that the first sec-
tion of the act of April 7, 1826, relating to collateral inheritance
tax, "shall be so construed as to relate to all persons who have
been at the time of their decease, or may be now, domiciled in
this commonwealth, as well as to estates," was held to be con-

stitutional as applying to the estate of one domiciled in Pennsylvania, dying after the passage of the original act, but before the passage of the later act, and this was affirmed by the Supreme Court of the United States, on appeal, on the ground that the decisions of state courts on questions of state constitutional law were binding on the Supreme Court of the United States. But the decision only affected the estate of one who under existing laws was taxable, and as his domicil was in Pennsylvania, his choses in action out of the state would seem to be taxable irrespective of the declaratory act.   Moreover, the doctrine that a retrospective declaratory act is constitutional so far as concerns past rights or transactions, has been repudiated by subsequent decisions: Menges v. Dentler, 33 Pa. 495; Reiser v. Saving Fund, 39 Pa. 137; Kay v. Penna. R. Co., 65 Pa. 269; Haley v. Philadelphia, 68 Pa. 45.

Passing, however, from the question of impairment of vested rights and not stopping to consider how far the exemption of $5,000 from the tax comes within the prohibition of the constitution of the state, article 9, section 2, Purd. 44, pl. 154, making void exemptions except of property held for public purposes, actual places of religious worship, etc., and conceding, what is far from clear, that the exemption applies not only to estates of persons dying after the passage of the act but to "so much of the estates of persons heretofore deceased as has not been actually distributed," and to legacies charged on land, under section 5, there still remains the question whether the provisions with reference to estates of persons dying before the passage of the act are not in disregard of the constitutional mandate (article 9, section 1), that "all taxes shall be uniform upon the same class of subjects."

The second section of the act provides that if the tax shall be paid "within three months after the death of the decedent," a discount of five per cent shall be allowed; but if not paid at "the end of the year from the death of the decedent," interest at the rate of six per cent shall be charged for such year; and after the expiration of such year interest at the rate of twelve per cent.   It adds, however, that when from claims upon the estate, litigation, or "other unavoidable cause of delay," the estate of the decedent cannot be settled up "at the end of the year from his or her death," six per cent "shall be charged"

upon the tax "arising from the unsettled part thereof from the end of such year until there be default."

Thus the date of the death of the decedent regulates the time from which "interest" is to be charged, no distinction being made in this respect between persons dying before the act and those dying after, except so far as estates of persons dying before the act are exempted from the penalty of twelve per cent at the expiration of the first year "from the death of the decedent" by the provision giving relief in all cases where the payment has been delayed by "unavoidable cause of delay," the absence of a law requiring payment being, perhaps, a sufficient "unavoidable cause." But while the penalty, where there has been unavoidable cause of delay, does not begin until "there be default," the payment of interest is fixed, inflexibly, at the "end of the year from his or her decease." Six per cent "shall be charged" from this time; and as if to leave no doubt that this applies to the past as well as the future, the interest is to be upon the tax "arising from the unsettled part" of the estate (almost the very words of the "proviso" in the first section imposing the tax on estates of persons dying before the passage of the act), "from the end of such year until there be default." There is no escape from this. Ita lex scripta. It is absurd and unjust, but the court cannot fix another time for the payment of interest, and there is no more injustice in making interest begin from a time anterior to the passage of the act than there is in subjecting estates vesting anteriorly to the tax itself. Of course the "interest," so-called, as applied to amounts not paid when there was no duty to pay a principal sum, is not interest at all, but simply an increase of burden, and the consequence is that while the estates of persons dying on the day before the passage of the act will have to pay only two per cent at the end of the year, with the right to an abatement of five per cent if paid within three months after the death, estates of persons dying a year before are required to pay the full two per cent, without reduction. Estates of persons dying two years before the passage of the act will have to pay a tax of 2.06 per cent; three years before, 2.12 per cent; and so on each year with increasing ratio until the tax is doubled by reason of the "interest," trebled, quadrupled, etc., all of these estates also losing the right to reduc-

tion for payment within three months. The provision as to estates of persons dying before the passage of the act is without any limit of time, and thus the burden is greater the greater the interval which has occurred since the date of the death, as in the case, for example, of a testator dying forty years ago whose will created a trust for a son or daughter for life with limitation to grandchildren or more remote descendants, of which instances are of daily occurrence. Of twelve estates passing lineally and exceeding $5,000 coming before the auditing judge upon the present audit list (June, 1897), four were of persons dying in 1896, one in 1894, one in 1891, one in 1886, one in 1881, one in 1866, one in 1851, and one in 1832.

Whether the title "An act taxing gifts, legacies, and inheritances in certain cases," clearly expresses the subject of an act which does not tax "inheritances" and does tax distributive shares of personalty passing under the intestate laws, though such shares are not mentioned in the title, and whether "certain cases" is sufficiently explicit to meet the constitutional requirement as to title, are questions suggested, but not now requiring consideration.

In the opinion of the auditing judge the tax cannot be demanded from the persons entitled to this estate, and the distribution has, therefore, been made without its allowance.

It is ordered and adjudged that the account be confirmed nisi on payment of clerk's fees, and that payment and distribution be made as above directed.

Exceptions to adjudication of executor's account having been filed, they were dismissed in the following opinion by FERGUSON, J., December 4, 1897:

The inherent right of the commonwealth to tax every species of property cannot be doubted. This is one of the attributes of sovereignty. The commonwealth must have revenue for its support, and the people must furnish that revenue, and taxation is the only method by which this can be done. Nor can it be doubted that the commonwealth has the right to tax that which is not property in actual possession, but in expectancy, by devolution upon the death of one person to others. This has been done for years in this state with reference to collateral heirs. So that there can now be no question as to the right of the

commonwealth to tax estates passing to heirs, whether collateral or lineal, provided that the act by which it is done does not violate any established rules for the construction of statutes or the constitution of the state. Therefore, the right of the legislature to pass the act of May 12, 1897, entitled "An act taxing gifts, legacies and inheritances in certain cases, and providing for the collection thereof," must be considered as an act properly within the power of the legislature to enact. The purpose of this act is to impose a tax upon succession to personal property. By the enacting clause it is provided, "That from and after the passage of this act, all personal property of whatsoever kind and nature which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same . . . . shall be and is hereby made subject to a tax of $2 on every $100 of the clear value of such personal property," etc. If the act had stopped here, there could have been no question as to its validity, but there are two provisos added to this enacting clause which are the objectionable features: First. "Provided, that personal property to the amount of $5,000 shall be exempt from the payment of this tax in all estates." Second. "Provided, that so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law, as well as the estates of persons who may die hereafter."

A proviso has been defined to be "an article or clause in a statute by which a condition is introduced:" Webster's Dictionary. "The office of a proviso generally is, either to except something from the enacting clause to restrain its generality or to exclude some possible ground of misinterpretation of it:" Potter's Dwarris on Statutes, 118. "As to a proviso, it has been said that its function is that of limiting the language of the law-maker, not of enlarging or extending the act or section of which it is a part, and its effect, that of negativing an authority granted beyond its prescribed and clearly defined limits. It would seem logically to follow from this view that where the proviso or saving clause exceeds that function, viz., that of creating an exception of some special thing from general language or excluding some possible ground of misapprehension, it must fail to be of any validity. Accordingly, it has

been held that a proviso which is repugnant to the enacting clause is to be held void: " Endlich on Interpretation of Statutes, sec. 185.

In Ihmsen v. Monongahela Nav. Co., 32 Pa. 157, our Supreme Court said: " If it (the proviso) was not intended to restrain the general clause, it was a nullity."

What does the second proviso in this act do? It does not restrain or limit or explain the enacting clause, but it enlarges the subjects of taxation to other than those contemplated by it, and extends the provisions of the act to other subjects which could not possibly be covered by the enacting clause. That clause provides only for the taxation of personal property which shall pass by will or the intestate laws from and after the passage of the act. The proviso imposes the tax upon so much of the estates of persons heretofore deceased as has not been distributed. Thus the subjects of taxation are extended to an indefinite limit, and so much of the estates of persons who may have died fifty years ago, as has not been distributed, is made liable for this tax. There are thousands of estates under the jurisdiction of this court, where the testator died many years ago, held in trust for the life of some one, which, when the time for distribution arrives, would be taxable under this proviso. This retroactive feature of the act is most objectionable, because it interferes with vested rights. While such legislation may be lawful, it is not looked upon with favor.

It is conceded that this act was not intended to be a tax upon property, but on the transfer or privilege of acquiring property by inheritance or bequest. It is not a tax upon the property itself, but on the right of succession thereto. In other words, it is a succession and not a property tax. This was no doubt the intention of the legislature, as developed by the words of the enacting clause; but this proviso attempts to impose a tax upon property by enacting that so much of the estates of persons heretofore deceased as has not been actually distributed shall be taxable. At the very moment of a person's death, his estate vests somewhere, either under his will or under the intestate laws, subject, of course, to the rights of creditors and the payment to the commonwealth of any taxes due under existing laws, but it vests eo instante at death. It is then property vested in those entitled thereto. It is not the right to a thing, but it is

the thing itself.  This proviso is therefore inconsistent with the enacting clause, in that it attempts to impose a tax upon that which was not contemplated by the enacting clause.  In Strode v. Com., 52 Pa. 181, the question was whether United States bonds, which were issued clear of taxes, were subject to the collateral inheritance tax.  The court clearly defined the difference between the right of succession to property and the property itself. Judge BUTLER said : " As the right to take by succession and testament is derived from the state, it must necessarily be enjoyed, subject to such conditions as the state may impose ; and if a condition be that the kindred or legatee shall pay a bonus, this is not a tax or burden imposed on their property or on the property of anybody else.  It is simply the price of the privilege which the state has conferred upon them."  See also Orcutt's Appeal, 97 Pa. 179.  We are of the opinion that the second proviso to the enacting clause is a nullity, because it in no way fulfils the office of a proviso, in that, instead of limiting and restraining the said clause, it enlarges it so as to embrace other subjects of taxation, and because it is inconsistent with and repugnant to the provisions of the said enacting clause.

But there is a more serious objection to this act.  Article 9, section 1 of the constitution of Pennsylvania, provides that " All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority of levying the tax." This tax is not uniform, but is unequal in many particulars. For instance : by the said second proviso to the enacting clause, if the views already expressed are correct, it is attempted to impose a tax upon property and not upon the right of succession thereto.  Now, why should a tax be imposed upon property acquired by will or descent and other property acquired by gift or purchase escape ?  Thus property acquired one way is taxed and that acquired another way is not.

The said proviso enacts that so much of the estates of persons heretofore deceased as has not been actually distributed shall be subject to the tax, so that in the same estate, as often happens, it is impossible to make distribution to all the distributees at the same time.  Those who were settled with before May 12, 1897, escape taxation, and those who are not settled with until afterwards are taxed ; thus the tax is not a uniform one on the same class of subjects.  Again, there are many estates that are

settled and distributed within a year after the death of the decedent, and there were many such in the year immediately preceding the passage of this act.    They are not taxable; but in the numerous estates, in which, from a variety of causes, settlement and distribution has been postponed, although the decedent may have been dead for many years prior to those above referred to, the tax is to be imposed.    Thus the subjects of taxation are determined by accident and not by any fixed principle.    If the retroactive feature of the proviso to the first section is good in law, then, under the second section of the act, all estates of persons heretofore deceased which have not been distributed are subject to penalties.    "If the said tax is not paid at the end of one year from the death of the decedent, interest at the rate of 6 per centum shall be charged for such year, and after the expiration of one year from the death of the decedent, interest shall then be charged at the rate of 12 per centum;" so that, in an estate in which the decedent has been dead for a number of years, the imposition of this so-called interest would almost amount to confiscation.    By this clause we have a penalty imposed for not complying with a law which had no existence.    It is no answer to this to say that it was not intended to impose penalties upon the estates of those who predeceased the passage of the act. Who is to determine this question?    The act speaks for itself and in language that will admit of but one interpretation.

The discount of five per centum allowed by this second section for payment of the tax within three months after death presents another instance of want of uniformity, as the estates of persons dying since the passage of the act can avail themselves of this privilege, while those who died before the act can by no possibility do so.    The constitution expressly provides that the only property which can be exempted from taxation is "public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity."    This act purposes taxing all personal estate passing by will or the intestate laws, valued at over $5,000, thus exempting this sum from taxation, while the constitution provides that only those subjects of taxation above enumerated shall be exempt.    Again, taxes are to be uniform on the same "class of subjects."    The class of subjects contemplated by this act is personal property

passing by will or under the intestate laws.    Now, if the amount of the estate so passing is less than $5,000, it escapes taxation, and if over $5,000, it is taxable.    Surely this cannot be considered a uniform tax on the same class of subjects, as the amount of the personal property which is the subject of taxation determines whether it is taxable or not.

The constitution provides that " No bill shall be passed . . . . containing more than one subject, which shall be clearly expressed in its title."    This act is entitled " An act taxing gifts, legacies and inheritances," etc.    An inheritance is defined by Bouvier to be a term applied to land, and yet the enacting clause of this act provides that it is a tax upon personal property only. Thus the purpose of the act is not clearly expressed in the title. It is not necessary to cite authorities in this state to the effect that if the title of an act does not clearly indicate its subject-matter, it is unconstitutional.

It may be observed that while the enacting clause limits the subject of taxation to personal property, the last section of the act declares it is the " intention of this act to impose a direct inheritance tax on all estates or parts not subject to the act or acts providing for the collection of collateral inheritance taxes."    So that by this sweeping provision all estates, whether real or personal, not reached by the collateral inheritance tax are intended to be covered.    This section illustrates another of the inconsistencies of this act, as this last section is in direct conflict with the first one.

We are therefore of the opinion that the second proviso to the enacting clause is null and void, because it does not answer the office of a proviso, and that the whole act is unconstitutional because of want of uniformity in the imposition of this tax.    The exceptions of the commonwealth are dismissed.

PENROSE, J., concurring, December 4, 1897 :

We are told by the distinguished counsel for the exceptant, whose official positions enable them to speak with authority which cannot be questioned, that by reason of lavish appropriations by the legislature—chiefly for what are called charitable purposes—largely in excess of the revenues which had theretofore been found amply sufficient for the ordinary, legitimate expenses of state government, the commonwealth was brought to

a condition bordering on insolvency; that something had to be done to furnish relief, and that with the degree of quickness spoken of with emphasis in a recent decision of the Supreme Court.   As long ago as 1826, the state of Pennsylvania had adopted the expedient of taxing the right of collateral succession—a system since followed by many other states of the Union; why should it not now depart from the policy which, for more than seventy years, had confined this species of taxation to collaterals, and extend it to widows and orphan children and grandchildren of decedents as well?   The exigency was a pressing one.   There was no time for careful preparation of an act, notwithstanding its immense importance and the radical changes which it would work in the law of descent; and so, by that species of composition which produced the essay on Chinese Philosophy by combining what the encyclopædia said on the subject of philosophy with its article on China, the act now before us was evolved,—with title taken from one state prefixed to sections suggested by statutes of still other states and by provisions of our own laws relating to collateral inheritance tax :

> Humano capiti cervicem . . . . equinam
> Jungere . . . . et varias inducere plumas
> Undique collatis membris. . . .

The act thus completed, however, as we are further told, it was perceived that the object intended—immediate revenue— would not be accomplished.   Like all others from which it was compiled, the act applied, prospectively, to the estates of persons dying after its passage, as to which, under existing laws, settlements could not be demanded until the expiration of a year.   To meet this difficulty heroic measures were required. There was therefore injected the " proviso " that the act, thus already drawn, which in express terms only affected future estates, should apply to estates not actually distributed (though already vested in the beneficiaries) of persons dying before its passage —no matter at how remote a date,—without stopping, for want of time, to consider how far it was in harmony with the other provisions of the act.   This proviso, it must be conceded, was an entirely original feature, as was also the device of keeping the real object of the act out of sight until disclosed in the last section, declaring that it was not, as it otherwise appears to be, to reduce the rate of collateral inheritance tax, but to subject

direct inheritances to taxation, and that in spite of its so-called title, it should, therefore, be known as "the direct inheritance tax law." Certainly no precedent for retroactive legislation through the medium of a proviso to an act operating prospectively in its enacting clause can be found in the statutes of this or any other state.

That an act so prepared should be replete with crudities, contradictions, inconsistencies and absurdities; that it should include "bodies corporate or politic" among the objects who may become "beneficially entitled to any property" by lineal succession; that its title should fail to mention distributive shares, which are taxed, and speak of "inheritances" which are not; that it should omit altogether "property transferred by deed, grant, or sale made in contemplation of the death of the grantor;" and make no reference to an intention to affect estates vested prior to its passage,—is only what might be expected. A strong appeal, however, is made in its favor on the ground of the financial embarrassment of the commonwealth, and because, for want of time, the draftsman or draftsmen could not weigh words or consider results; and that it should, therefore, be treated leniently. But constitutional restrictions and provisions, intended for the very purpose of preventing hasty or inconsiderate legislation, cannot thus be overlooked or got rid of. The power of the legislature in matters of taxation is very great, but the constitution is supreme, and suprema lex salus est populi is no less true than that salus populi suprema est lex.

Our present inquiry concerns only the operation of the law as affecting, under the proviso, the estates of persons dying before its passage. We have nothing to do, of course, with the question of its policy or the hardship or injustice which may result; and while a law will never be permitted to operate retroactively to the prejudice of vested rights, unless, expressly or by unavoidable intendment, it so provides (and it may well be doubted whether enactive operation will be given, to accomplish such a purpose, to a proviso), it has never been supposed that retroactive legislation, so far as it affects merely civil rights, is within any constitutional prohibition, unless it impairs the obligation of contracts or takes private property or rights of property for public use without compensation; though such a taking is not necessarily legal because it is done under the form of a tax,

—as where the property or rights of A are taken or diminished to meet public exigencies which equally affect or benefit B, whose property or rights are left untouched.

How far this act offends in this respect, and how far it complies with constitutional requirements with regard to title, and whether the actual title is that found at the beginning or at the end of the act, are questions of great importance, which need not now be considered; for it is obvious that the retrospective operation of the act conflicts with the constitutional provision that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

Treating estates of persons dying before the passage of the act as a distinct class from those of persons dying afterwards—though it is by no means clear that they are to be so treated, there is a want of uniformity as to the former class, first, because a privilege in the way of discount is given in the case of such as die within three months before the passage, not given where the death has been at an earlier date; and, second, because by reason of the provision that in all cases where the tax is not paid in one year "interest at the rate of six per centum shall be charged" from the end of one year "from the death of the decedent,"—the rate of taxation, under the name of interest, which it is not (Richards v. Gas Co., 130 Pa. 37), is increased in proportion to the length of time that the death has preceded the passage of the act. This difficulty cannot be disposed of by saying that it is absurd, and that the act will be so construed as to avoid it. Where the words are express and their meaning cannot be changed without disregarding them altogether, there is no room for interpretation, and the legislature, not the court, is responsible for the consequences: Dwarris on Statutes, 204–205; Sutherland on Stat. 315; Black on Interpretation of Laws, 35, 36; Maxwell on Stat. 5–7; Endlich on Stat. 6, 7; Bradbury v. Wagenhorst, 54 Pa. 180. "Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment," the express words must in such case not be departed from (Black on Interpretation of Laws, 36, citing many authorities). As was said by Lord Denman, in Green v. Wood, 7 Q. B. 178: "It is extremely probable that the alteration suggested would express

what the legislature meant; but we, looking at the words as judges, are no more justified to introduce words, than we should be if we added any other meaning.  We cannot do more than give such a meaning as the words authorize."

But the want of uniformity in the act is no less apparent in other provisions, affecting both classes of estates.  The tax professes to be two per cent on all legacies, but the effect of the exemption of $5,000 (and this irrespective of the question how far the exemption in itself is forbidden as being " other than the property" permitted to be exempted by section 1, article 9 of the constitution) is to make the rate upon legacies of the same amount vary with every variation in the size of the entire estate.  Thus: Legacies of $2,500 to each of two children, the estate amounting in all to $5,000, are not taxed at all; legacies of $2,500 to each of three children, the entire estate being $7,500, are taxed at the rate of two thirds of one per cent ($50.00 in all); legacies of $2,500 to each of four children, the entire estate being $10,000, are taxed one per cent ($100 in all); legacies of $2,500 to each of six children, the entire estate being $15,000, are taxed one and one third per cent ($200 in all); and so on in ever increasing ratio.  And yet, as the title informs us, the tax is imposed, not on the estate, qua estate, but on legacies as a class; and executors are required to deduct from every legacy " two dollars in every hundred upon the whole legacy paid . . . for the use of the commonwealth."

The inequality, perhaps, is still greater in the case of unpaid legacies under wills of persons dying before the passage of the act, where actual distribution to other legatees had previously been made to the full extent of the exemption.

Finally there is the want of equality as to past estates resulting from exempting from tax such legacies as have been actually paid before the passage of the act, and imposing it upon those which, though no less completely vested, have been withheld from the legatee by pure accident, neglect, dishonesty, pressure of business of courts or counsel, etc.

But, it is said, a tax is not within the constitutional provision unless it is imposed annually; the question of uniformity is to be determined, not by what the law does, but by what the legislature may say as to the rate; and that notwithstanding absolute inequality may be demonstrated, a difference of this kind does not constitute a " want of uniformity."

The case is to be decided under the constitution and laws of Pennsylvania.  " A constitution," as was said by Chief Justice GIBSON, in Navigation Co. v. Coons, 6 W. & S. 101, 114, " is made not particularly for the inspection of lawyers, but for the inspection of the million, that they may discover their rights and duties; and it is consequently expressed in terms that are most familiar to them.   Words, therefore, which do not of themselves denote that they are used in a technical sense, are to have their plain, popular, obvious and natural meaning."   Taxes on collateral successions had been known for more than fifty years when the constitution of 1874 was adopted.   They are spoken of as taxes in innumerable acts of assembly and decisions of the courts, and by the people of the state, who, during all this time, had been accustomed to paying them; and the very act now under consideration, not only in its title (which would otherwise be defective), but in every section, speaks of the " tax " which it seeks to impose.   And yet we are solemnly asked to say that this is not a tax, but an excise or duty.   What is an excise or duty but one species of tax ?   The constitution is explicit: " All taxes shall be uniform," etc.   See Com. v. Randall, 2 W. N. C. 210.   If the people of Pennsylvania who thus expressed themselves are to be told that " all " does not mean all; that a tax is not a tax unless imposed periodically; and that " uniform " does not mean uniform, but is dependent on the terms and method by which the legislature may express itself, the announcement should be made by that tribunal whose decrees are final, and to whose decisions all must bow in silent submission.

I concur in sustaining the exceptions in those estates in which the tax has been allowed, and dismissing them in all others.

ASHMAN, J., dissenting, December 4, 1897 :

The specific reasons by force of which this act is sought to be overthrown nearly all revolve around the proposition that it violates the article of the constitution which declares that " all taxes shall be uniform upon the same class of subjects."   That the act exempts personal property to the amount of $5,000 in all estates and taxes all personalty beyond that limit; that it taxes undistributed parts of estates and exempts those which had been paid before its passage; that it is levied upon personal property to the exclusion of real estate; these and other objec-

tions which have been made are simply iterations of the charge that it is not uniform in its operation. With profound respect for the opinion of the majority of the court which has found this indictment to be true, I am yet unable to see in what respect the act offends the organic law of the state. It may be faulty in construction, by introducing a new class of subjects through the gate of a proviso, or, by describing as direct inheritors, artificial bodies which do not take by inheritance, but if its purpose is legitimate, it will stand in spite of these defects. No case has yet decided that a slip in grammar, or a blunder in method, or even an omission of words where they are supplied by the context, will vitiate a statute. It is perhaps well that the courts have been lenient, because acts drawn by accomplished lawyers, which have established rules of property and personal rights, have nevertheless been wanting in scientific arrangement and even in accurate expression.

The principle which runs through the 9th article of the state constitution is that taxation may be, as inevitably it is, levied upon classes; the language of the article, "all taxes must be uniform upon the same class," can imply nothing else. Hence the uniformity which is prescribed is not absolute and universal, but class uniformity. If it were otherwise, the legislature, when it would raise a revenue, must tax everything, except the properties specifically named in the act which can be the subject of ownership, or else it must forego any taxation at all. It may not place a levy upon mortgages, or carriages, or steamships, and stop there; if absolute uniformity is the mandate of the constitution, it must tax also the tools of the mechanic, the library of the professional man, the rags of the beggar. As to the make-up of these classes, whether they shall be composed of persons or property; as to their limits, whether they shall embrace objects few or many; and as to the rate of taxation, whether it shall be high or low, or whether it shall differ as between the classes, the constitution says nothing; its single injunction is that within each class the imposition shall be uniform. What may be styled the ethics of taxation is left to be dealt with by the legislature. The charge that the act of May, 1897, is aimed at the rich, and throws upon that class the whole of a burden which should be shared by the poor, may be adapted to the hustings, but should have no place in a legal

argument which is addressed to the constitutionality of the stat-
ute.   Some matters may be safely left to the natural sense oî
the individuals who compose the lawmaking body; if they are
not above, they at least are not below the moral plane oî the
community from which they have been chosen; and the instinct
of self-preservation, if a higher incentive shall be wanting, will
save them from adopting any measure, the monstrous injustice
of which may work their political destruction.

   That this constitutional rule of uniformity is to operate only
within the respective classes of taxable objects, so that the rate
assessed upon one class may differ as widely as the poles from
the rate affixed to another, is also shown by the nature of the
properties which the constitution itself permits to be exempted
from taxation.   These belong to one division only; they are
all tangible and material objects.   But incorporeal property
exists which is the subject of ownership and may be therefore
the subject of taxation; and the·standard for its assessment
may be wholly unlike the standard which governs in the former
class.   So there are rights, the creatures of statute, which are
not technically property, but which nevertheless have value, and
for that reason are available for state revenue.   The right to
carry on a particular business or trade, and the right to inherit
the estate of a decedent are of this character.   The impost laid
upon these rights has always been distinguished by the courts
from taxation, and has been styled a license.   Far from being
a verbal refinement, the distinction between the two terms is
radical; a tax is the debt which the citizen owes to the state;
a license is the title by which he claims and exercises his right.
When, therefore, the organic law of the commonwealth, in plac-
ing a curb upon the body, which, outside of the limits imposed
by the constitution, is omnipotent, by declaring that the taxes
imposed by that body shall be uniform, but is silent as to the
licenses which are equally subject to its will, the question may
be asked with the utmost seriousness, whether licenses were
intended to be uniform.   The courts have the power, and it is
one to be exercised only with infinite caution, to undo the work
of the legislature by declaring an act unconstitutional; but
they cannot do this by reading into the constitution words which
the framers of that instrument saw fit to leave out.   To declare
a statute unconstitutional upon the strength of a word which

nowhere appears in the constitution, would be a more flagrant violation of that instrument by the courts than a faulty title to the act or the introduction of an enacting clause under the form of a proviso would be by the legislature.

But this point may be abandoned, and it may be conceded that the legislature obliterated, if such a thing was possible, the distinction between taxes and licenses, by giving to this act the title of a tax law.  In that case the charge of two per cent on inheritances was a tax, and, like all other taxes, required to be uniform within the class on whose constituents it was laid. Just here the main assault upon the statute is attempted.  It is said that a tax law which singles out for its purpose from among the inheritors of the estates of decedents dying before its passage only those who had not yet received their portions, while it leaves untouched those who had been paid, is not uniform in its working.  The fallacy of this objection lies in its assumption that the legislature was in some way restricted in its formation of classes of taxable subjects ; that it could not, for instance, arrange in one class lineal descendants and in another collateral kindred ; and that it could not impose upon the first class a higher or a lower burden than that which it placed on the second.  It would waste time, however, to cite a tithe of the cases and of the acts which have never been questioned, by which this power of the legislature is assured.  A few of the authorities were referred to in the adjudication in Lacey's Estate, and they show that these classes may again be subdivided, without thereby creating an illegal exemption or impairing the uniformity required by the constitution.  What, then, is the class of taxable persons which has been created by the act of 1897? The answer is : All persons (not taxed as collaterals) who, after the date of its passage, shall be paid or entitled to be paid their shares of the estates of decedents.  The act taxes their right of inheritance, not their property ; and it measures the value of the right in the individual instance by the value of the individual share.  It does not tax the heritable right of those who, before its date, had been paid their shares, not because it lacks the power to tax, but because in their case the right had been exhausted by the payment, and was therefore valueless.  The inheritor from a decedent holds his right of inheritance as he holds his property, subject to the taxing power of the state.

The circumstance that when the right arose it was not covered by a tax law, gave him no such vested right as would save it from future taxation. Even on the strict equities of the case, two men stand on the same grade and may be enrolled in the same class, who receive their respective shares on the same day, although the right of inheritance accrued to one of them fifty years ago, and the right of the other only yesterday. Not to labor the point unduly, the inheritor whose right was acquired before the act, but whose share was still undistributed at the date of the act, stands, by comparison with his codistributee who was paid his interest, in the same position as the buyer of a commodity to be delivered in the future, which at the time of purchase was taxed, but upon which, before the delivery, a tax has been laid. He is subjected to an after-imposed burden from which the seller is exempt; but can it be said that the taxing power has interfered with his vested rights? To review in a sentence what has been said, and to discard the distinction between a tax on a right and a tax on property, which would seem to be the scientific point from which to argue, the power of the legislature to form taxable groups of persons or things is untouched by the constitution, and is practically limitless; in the exercise of this power the legislature may class together all direct inheritors, who, after a given date, shall be paid their shares of decedents' estates, whether the right to inherit accrued before or after that date; that the power is restricted only to the extent that the tax shall be uniform within each class; and, finally, that a tax of two per cent on all estates embraced in this class is a uniform tax within the meaning of the constitution.

I have entitled this as a dissent from the opinion of the court in Lacey's Estate, because the adjudication of the account in that estate set out other reasons which I believe to be valid, but which I have not repeated, for upholding the constitutionality of the act. Except as to the provision for discount and penalties connected with the estates of decedents dying before its passage, which, if it cannot be made to operate from the date of the act, must be held to be invalid, because impossible of a literal execution, the act, in my judgment, conforms to the requirements of the constitution. See Cope's Estate, ante, p. 1.

*Error assigned* was to the decree of the court below.

*Francis A. Osbourn, John C. Grady, John P. Elkin* and *Henry C. McCormick,* attorney general, for appellant.

*John G. Johnson,* with him *F. Gaston,* for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 24, 1899:

This and four other appeals by the commonwealth, involving substantially the same questions, were heard and considered together at last term.    The appellant's claims against the respective estates were for state tax under the second proviso to the 1st section of the act of May 12, 1897, "known as The Direct Inheritance Tax Law," which is as follows: "And provided further, that so much of the estates of persons heretofore deceased as have not been actually distributed and paid to the persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law as well as the estates of persons who die hereafter."

The enacting clause of the first section preceding the two provisos is manifestly prospective and seeks to impose the two per cent tax only on personal property thereafter passing from the respective owners thereof under the intestate law or by will, etc., while the proviso above quoted is distinctly and indefinitely retroactive in its operation, and is claimed to have been inserted for the purpose of so enlarging the scope of the act as to bring within its terms and provisions undistributed and unpaid portions of the respective personal estates of those who died prior to the passage of the act.

While these cases involved generally the constitutionality of the act, as a whole, they specifically challenged the constitutionality of its retroactive provisions as being more manifestly violative of the principles of uniformity and relative equality which underlie every just system of taxation.    In view of this difference between the retroactive and the prospective provisions of the act, etc., it was deemed advisable to withhold our decision until parties interested in the prospective provisions of the act had an opportunity of being heard.    That opportunity was presented at this term, and after a full and able discussion by learned counsel on both sides, and a careful consideration of the act, in its entirety, we are fully satisfied that the learned court below was clearly right in declaring that the act in ques

tion is unconstitutional and void.  Our reasons for thus concluding are stated in an opinion just filed in Cope's Estate, Commonwealth's Appeal, No. 390, January term, 1898, ante, p. 1, and need not be repeated here.

In view of our decision in Cope's Estate it is unnecessary to consider in detail the objections specifically urged against the retroactive provisions of the act.

For reasons given in the opinion referred to, the decree in this case is affirmed and appeal dismissed at appellant's costs.